# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* D.C.

No. 19-0188 (Ohio County 18-CJA-35)

## MEMORANDUM DECISION

Petitioner Father A.C., by counsel Betsy Griffith, appeals the Circuit Court of Ohio County's January 14, 2019, order terminating his parental rights to D.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Joseph J. Moses, filed a response on behalf of the child also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent, denying his motion for a post-adjudicatory improvement period, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, petitioner was the subject of child abuse and neglect proceedings in 2016. The DHHR filed the prior child abuse and neglect petition against petitioner after the mother, A.M., gave birth to twins, both of whom were born drug-exposed. One twin died shortly after birth, and the other child suffered severe complications as a result of having been drug-exposed. The DHHR alleged that petitioner knew of the mother's drug abuse and failed to protect the child from the same. The DHHR further alleged that petitioner had an extensive criminal history. Before the circuit court adjudicated petitioner, it requested that this Court answer a certified question, which this Court addressed in *In re A.L.C.M.*, 239 W. Va. 382, 801 S.E.2d 260 (2017). Subsequently, petitioner was adjudicated as an abusing parent, and the circuit court ultimately terminated his parental rights. Petitioner appealed and this Court affirmed the dispositional order in *In re A.C.-1*, No. 18-0062, 2018 WL 2278095 (W. Va. May 18, 2018)(memorandum decision).

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

In April of 2018, E.S., the mother of the child at issue in this appeal, gave birth to D.C., who is petitioner's biological child. Shortly after the child's birth, the DHHR filed the instant child abuse and neglect petition against the parents alleging that the mother abused opiates and cocaine during her pregnancy and that D.C.'s urine and umbilical cord tested positive for cocaine at birth. The DHHR alleged aggravated circumstances due to petitioner's prior termination of parental rights to an older child and further alleged that he knew of the mother's drug abuse and did nothing to protect D.C. Further, the DHHR stated that petitioner had an extensive criminal history that included a conviction for unlawful taking of a vehicle in 1996; a conviction for conspiracy with intent to deliver cocaine in 1998, for which he was incarcerated for eighty-seven months; a revocation of his supervised release in 2005; a conviction for distribution of cocaine in 2005, for which he was sentenced to forty months of incarceration; a conviction for delivery of marijuana in 2012, for which he was sentenced to one to five years of incarceration; and a conviction for manufacturing or delivery of a controlled substance, for which he was sentenced to one to five years of incarceration. Indeed, petitioner was incarcerated at the time of the petition's filing and had never met the child due to his incarceration.[2]

The circuit court held an adjudicatory hearing in June of 2018. Petitioner admitted that the case involved aggravated circumstances based upon the prior involuntary termination of his parental rights to an older child. He also admitted that he had an extensive criminal history and had been incarcerated since D.C.'s birth. However, petitioner did not acknowledge that those admissions rendered him an abusing or neglecting parent. Nevertheless, the circuit court adjudicated petitioner as a neglecting parent.

In December of 2018, the circuit court held a dispositional hearing wherein the court took judicial notice of petitioner's criminal history and prior termination of his parental rights to an older child. Petitioner testified in support of his motion for a post-adjudicatory improvement period. Petitioner reported that he was involved in prior abuse and neglect proceedings wherein he submitted to drug screens three times a week for approximately a year and a half. According to petitioner, he only tested positive for drugs on two occasions during that time. Further, he maintained employment and visited the child during those proceedings. Regarding the instant matter, petitioner admitted that he had been incarcerated at the time of the child's birth and had only recently been released on parole one month prior to the dispositional hearing. During his incarceration, petitioner completed two classes regarding substance abuse and making good decisions. Petitioner admitted to a long criminal history of drug-related offenses but stated "I don't do drugs. I mean, I sell drugs." He explained that his positive screens for controlled substances in his prior proceedings were because "if you touch drugs so much then, yes, you can catch a dirty [screen] from it." Petitioner also admitted that he knew E.S. was abusing drugs while pregnant with D.C. Nevertheless, petitioner requested an improvement period and stated that he had employment in place, had already provided a negative drug screen for that employment, and resided in a stable home that he owned.

---

[2]The record reflects that petitioner pled guilty to attempted delivery of a controlled substance and was sentenced to not less than one nor more than three years of incarceration in February of 2018.

The DHHR presented the testimony of a Child Protective Services ("CPS") worker who recommended termination of petitioner's parental rights. The worker testified that the instant petition had been filed based upon identical circumstances to those in the prior petition and that petitioner had failed to address the conditions of abuse and/or neglect since that time. Petitioner had been incarcerated throughout the proceedings and had been unable to participate in any services offered by the DHHR. After hearing evidence, the circuit court found that petitioner had "absolutely no relationship with the child and never contributed to the emotional, financial or physical support of the child." Further, per his own testimony, petitioner knew of the mother's drug use during her pregnancy, but took no steps to protect the child. Although petitioner claimed to have learned from the two courses he took while incarcerated, petitioner refused to acknowledge that his actions were abusive and/or neglectful at the adjudicatory hearing. Accordingly, the circuit court determined that petitioner had not remedied the conditions of abuse that led to the prior termination of his parental rights and terminated his parental rights upon findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. It is from the January 14, 2019, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in adjudicating him as a neglecting parent based "solely" on his prior involuntary termination of parental rights, prior criminal history, and incarceration at the time the petition was filed. Although petitioner stipulated to these things, he denies that his criminal and CPS history render him a neglecting parent with regard to D.C. According to petitioner, no evidence was presented to demonstrate "any direct, indirect, or threat of harm to this child by [p]etitioner." As such, he avers that his criminal acts and incarceration, when viewed in isolation, did nothing to harm the child, and the child suffered no harm and did not go without necessities due to any acts of petitioner. We disagree.

---

[3]Both parents' parental rights were terminated below. The child was placed in a foster home with a permanency plan of adoption therein.

We have previously noted as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)). Pursuant to West Virginia Code § 49-1-201, a "neglected child" is one

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian.

There was sufficient evidence presented upon which to adjudicate petitioner as a neglecting parent. The record demonstrates, and petitioner admits, that he has an extensive criminal history involving drug-related charges dating back to 1996. Petitioner has been incarcerated off and on since that time. In fact, petitioner's most recent incarceration occurred following charges of attempted delivery of a controlled substance, cocaine, after he and the mother were pulled over in a vehicle stop and cocaine was found on the mother's person. Due to his incarceration, petitioner missed the birth of his child, who was born-drug exposed and suffered from the related complications, and had no ability to provide any of the necessary food, clothing, shelter, supervision, medical care, or education.

Moreover, contrary to petitioner's argument, the circuit court considered factors in addition to his criminal history and incarceration. The circuit court took judicial notice of petitioner's prior child abuse and neglect proceedings wherein he was adjudicated as an abusing parent after his older child was born drug-exposed. As petitioner well knows, this Court has held that

> [w]hen a child is born alive, the presence of illegal drugs in the child's system at birth constitutes sufficient evidence that the child is an abused and/or neglected child, as those terms are defined by W. Va. Code § 49-1-201 . . . , to support the filing of an abuse and neglect petition pursuant to W. Va. Code § 49-4-601 (2015) . . . .

4

*A.L.C.M.*, 239 W. Va. at 383, 801 S.E.2d at 262, syl. pt. 1. In *A.L.C.M.*, we found that "with respect to [the father's] alleged failure to stop [the mother's] illegal drug use during her pregnancy, the statutes governing abuse and neglect proceedings allow a finding of abuse to be based upon a parent's knowledge that another person is harming his/her child." *Id.* at 391-92, 801 S.E.2d at 269-70. Despite knowing that he lost his parental rights to A.L.C.M. due to his inability to address the conditions of abuse, petitioner entered a relationship with E.S., who abused drugs during her pregnancy and gave birth to drug-exposed D.C., but failed to take any measures to protect the child. In this case, petitioner and the mother were together when petitioner was arrested for attempted delivery of a controlled substance and cocaine was found on the mother's person. Further, petitioner later admitted at the dispositional hearing that he was aware of the mother's drug abuse during her pregnancy with D.C. We have previously held as follows:

> [w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49-6-1 to -12 (1998) [now West Virginia Code §§ 49-4-601 through 49-4-610]. Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49-6-5b(a) (1998) [now West Virginia Code § 49-4-605(a)] is present.

*In re Kyiah P.*, 213 W. Va. 424, 427, 582 S.E.2d 871, 874 (2003) (quoting syl. pt. 2, *In the Matter of George Glen B., Jr.*, 205 W. Va. 435, 518 S.E.2d 863 (1999)). Clearly, petitioner failed to remedy the conditions of abuse that led to the termination of his parental rights to his older child. As such, while the circuit court's order does not specifically set forth these facts in its order adjudicating petitioner, it did base its decision generally upon the existing aggravated circumstances. The fact remains that petitioner knew of the mother's substance abuse but failed to protect the child, in addition to his failure to provide the child with the necessary food, clothing, shelter, supervision, medical care, or education as a result of his incarceration on drug-related charges. Accordingly, we find no error in the circuit court's decision to adjudicate petitioner as a neglecting parent.

Petitioner next argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. According to petitioner, he "has taken sufficient steps to remedy the problems of abuse which led to his previous involuntary termination [of parental rights] to his first child." Specifically, petitioner testified that he voluntarily completed two programs while incarcerated during the proceedings, acknowledged that he has sold drugs in the past and needs help with this issue, agreed to submit to drug screens and treatment, maintained suitable housing, and agreed to discontinue any communication with the mother. As such, petitioner avers that he demonstrated that he was likely to participate in an improvement period and should have been granted the same. We find petitioner's argument to be without merit.

5

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

The circuit court did not abuse its discretion in denying petitioner's request for an improvement period. Despite having his parental rights to an older child involuntarily terminated due to his criminal activity and involvement with drugs, petitioner maintained throughout the proceedings that his activity had no effect on the child. While petitioner avers that he has acknowledged that he has sold drugs in the past and testified at the dispositional hearing that he learned how his actions affected his child, he has failed to meaningfully accept responsibility for his actions. Even on appeal petitioner maintains that his criminal history and incarceration had no impact on his child. We have previously noted that

> [f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Granting petitioner an improvement period would have been an exercise in futility at D.C.'s expense given petitioner's refusal or inability to understand how his criminal actions and involvement with drugs have affected the child. Moreover, while petitioner points out that he successfully submitted to drug screens in prior proceedings and maintained suitable housing, we have previously held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Here, petitioner failed to acknowledge how his criminal actions have affected the child and, while he appears to be able to pass drug screens, the circuit court was not required to exhaust every speculative possibility of parental improvement in this case, especially where petitioner himself noted that selling drugs, and not abusing them, is his problem. Accordingly, we find no error in the circuit court's decision to deny petitioner's request for an improvement period.

Petitioner lastly argues that the circuit court erred in terminating his parental rights rather than granting him a less-restrictive disposition. According to petitioner, the circuit court was required to give precedence to the dispositions as listed in West Virginia Code § 49-4-604(b) and

that it should have granted him disposition pursuant to § 49-4-604(b)(5). We find no error in the circuit court's termination of petitioner's parental rights.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c) defines "no reasonable likelihood that [the] conditions of abuse or neglect can be substantially corrected" as follows: "the abusing [parent] . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help."

Here, petitioner's parental rights were previously terminated to an older child due to his failure to protect the child from the mother's drug abuse and subsequent failure to address the circumstances of abuse. Despite the experience of those prior proceedings, petitioner again entered into a relationship with a drug abuser, who gave birth to a drug-exposed child. Clearly, petitioner failed to address the circumstances of abuse from the prior proceedings. To the extent petitioner argues that he completed two classes while incarcerated and maintains his own home, we note that petitioner failed to meaningfully acknowledge how his actions affected the child and further point out that housing was not an issue raised in the petition. While petitioner argues that he should have been granted a less-restrictive alternative to termination of his parental rights, we have previously held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to address the conditions of abuse and meaningfully acknowledge how his actions affect his child, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and/or neglect could be substantially corrected in the near future and that termination was necessary for the child's welfare. Therefore, we likewise find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 14, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 12, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

8